Good morning. May it please the Court, my name is Anna Benvenu. I represent Petitioner Vinod Kumar. There are two issues before this Court today. The first is the Board's finding that the Government successfully rebutted Mr. Kumar's presumption of a well-founded fear of future persecution. The second is Mr. Kumar's eligibility under the Convention Against Torture. The issue of Mr. Kumar's ability to internally relocate is not before this Court today. The IJ considered the issue. The Board conducted a internal relocation. Therefore, this Court cannot consider it under Cordon Garcia. To meet its burden under 8 CFR 1208.13b, the Government must show that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear. That's the first inquiry. It doesn't even reach the individualized analysis of the respondent's fear if it doesn't find a change, a fundamental change. Here, the Board erred on both counts. There has not been a fundamental change in circumstances, and certainly the Government cannot show that between 2000, when Mr. Kumar was last tortured by the Indian Government, and 2002, the date that the last country conditions evidence on the record exists, that there was a fundamental change in India. The only background document on this record is the 2002 Human Rights Report from the State Department. That was published in 2003 and described in India in 2002 were not also true in India in 2000. In order to know that, there needs to be some kind of baseline for comparison. The report itself in the language doesn't suggest that there's been a change, and there's no other reports in the record from which the BIA could have possibly compared the evidence that existed in 2002. Without either the State Department report itself mentioning that there's been a change or other evidence from which to compare it to, there's no way that the Government could have met that burden. Moreover, the State Department report itself notes that custodial abuse is deeply rooted in police practice, and it would be difficult to imagine that something so deeply rooted changed fundamentally in that two-year period. Are you really suggesting, then, there aren't enough country reports? I'm suggesting that the record that exists can't show that there's been a fundamental change in country conditions. I appreciate that's your shorthand version, but are you suggesting, then, that on this record, the country reports that are here are just not adequate? They needed more country reports? That's correct, Your Honor. And so, therefore, what did they need? Did they need a country report from 2000? That could have possibly then provided a baseline. Did they need a country report from 2005? Well, the record closed there, but, yes, anything to provide a baseline of change. Well, what I worry about this is that what is the standard of review here? What is my standard of review on country reports? What is it that I have to require the IJ, or in this case, we're really talking the BIA, because the BIA is the one making this decision. What is the standard for them to look at as to country reports? What is the standard in the law about that? Well, it's the government's burden in this case to show by preponderance of the evidence that there's been a change. Right, that there's been a change. And then I have to say, was there substantial evidence to sustain? Correct. And in this case... Now, if I look at the BIA's own decision about that, and I go right to it, the BIA said three things. Correct. The Department of State's country report observes in Punjab the pattern of disappearances prevalent in the 90s appears to be at an end. Right, but there's no evidence that that wasn't true. And it says it appears that the Indian government is beginning to take steps to hold accountable the police and security officials who engaged in serious human rights abuses, which is also in the country report. Correct. And it says approximately 100 police officials either faced charges, were prosecuted, or were under investigation for those abuses. That's correct. Well, the question is, was that not also in the report in 2000 and in 1999? And I submit to you that the State Department reports frequently when the situation has not changed repeat the same information where the situation is the same. I don't have that in front of me, do I? That's correct, but it's the government's... The honest truth is, I am not here to advocate one side or another as a judge. I'm here to say, given that that is in the country reports, is that substantial evidence, even if I disagree with it? Right. Even if I think they're out to lunch, is that substantial evidence? Correct, Your Honor, and I'm not asking you to disagree or agree. What I'm asking you to do is compare and apply the legal standard. Has there been a fundamental change? And with this record, it's not clear that this is a change. What case do I have that says I have to have a country report from all the years to see that there is a change? Well, none. If the country report itself said that there was a change, you certainly wouldn't need... When did the country conditions report say the change occurred? The country report is silent as to whether there was a change at all. It just makes simple statements, such as the pattern of disappearances prevalent in the 90s appears to be at an end. That was also true in 99. When did the country... Did the country conditions report indicate that there were... That, you know, the disappearances began to subside in... No, it did not. It's silent as to when there was a change, and that's kind of my point. Because it's silent as to when there was a change, there's no baseline to compare when that change occurred. And it's possible that it occurred long before Mr. Kumar even left India, in which case the government can meet its burden. But it's equally plausible that the country may be in an upward trajectory when it comes to human rights violations, and so that they're continuing to make progress and so forth. I mean, how are we in San Francisco at today's date to read these reports and say that your explanation, because they use the same language, there is no change? Well, the issue is just that... Their language is promising. Their language is hopeful and seems to indicate that things are getting better in India. But that's not the inquiry. The inquiry is whether or not there was a change in that two-year period. And the record simply is not supported by substantial evidence that that's the conclusion. But even if it were... I think the more difficult challenge is to figure out how to apply these country reports in an individualized way with the specific petitioners' situation in mind. I agree. That is a conundrum. I agree. And even if there had been a fundamental change, the board failed to properly conduct that individual analysis. How do you do that? Well, in its decision... To check out whether or not the police station is still two doors down from the house or... No. Whether the same police officers occupy the station or... What you have to do is analyze the particular past persecution this applicant suffered and ask the question. In this case, the board completely omitted one of the motives behind the police persecution of Mr. Kumar. They only analyzed... Which was? Which was whether or not he faces a well-founded fear based on perceived opposition to police corruption. But that's exactly why they put in there approximately 100 police officers either face charges, were prosecuted, or were under investigation. Right. And they also ignored the sentence before that appears on two pages before that in the same report that says hundreds of police and security officials were not held accountable for serious human rights abuses. Well, but that's just arguing one side of the evidence versus the other. Again, I'm on substantial evidence as is outlined in the report. Right. And this goes directly to that issue. But... Now, you can take other evidence in the record and say, well, it goes to the opposite. But now I'm not supposed to be prejudging or second judging or even quarterbacking on Monday or Sunday what the I.J. said. That's correct. I'm supposed to say, was there substantial evidence going directly to the issue? Right. And in this case, Your Honor, there was not. I'd like to reserve my remaining time. Good morning, Your Honors. I'm Robin Taylor, and I represent the United States in this matter appearing on behalf of Attorney General Holder. Members of the Court, as you sit here today, the question is whether this particular petitioner faces abuse, persecution, or torture if he's returned back to the Punjab. And what the law states in the Ninth Circuit is the case law that deals with the country reports, that those country reports are sufficient to establish a baseline and facts to determine if someone can be returned. And it is not always the only evidence, but it is strong evidence and substantially sufficient to show the conditions in that country. And what we have here that even goes beyond that is an individual analysis by the board that actually looked not just at sort of a cause, you know, what do we do with his, but Mr. Kumar himself, and whether, in fact, it's likely that he has a well-founded fear and whether he can be returned and live there free of the abuse, persecution, and torture, which they took as true in his petition. With respect to the findings, if you look at the report and you look at the findings made by the board, there are numerous statements that explain that the insurgency is over and that the ---- When did the insurgency end, according to the report? It states that as of 90 to 95, the conditions were more serious, but they had improved greatly by the mid-'90s. And by 2002, life appeared to return to normal in the Punjab region. And there are statements as to that effect also in the board findings. And so the specific region where this individual lives had greatly improved. So is the relevant timeline from your perspective 2002, or is it that the insurgency had pretty much subsided, but he was nevertheless arrested after it had subsided? I think you have to look at the factors as a whole. I think there's no crystal ball I can look at. And obviously a report feels more artificial or it may feel more generic. But this board went beyond that report and actually looked at him as an individual. Okay. Let me listen. And that is, assuming that the country condition report says that the insurgency subsided in the, what, late-'90s? Correct. He was arrested and had his problems acted. He had his ---- One could suppose that it didn't make any difference. That the counterinsurgency had subsided. He was arrested the second time in 2000 for a specific event of going to a funeral. And I see your point. So what's your response to that? I think you have to look at this particular individual. Well, I am. And that's the point. I'm looking at him and saying that's when he was arrested, but the counterinsurgency had already subsided. So if that's true, the subsidence is kind of like immaterial. Because he was arrested nevertheless. And he was not a Sikh, moreover. And I'm not so sure that the BIA takes account of that. With respect to ---- I don't think you can conclude that simply because he was arrested in 2000 that that dismisses the findings of the report as a whole. I think the fact that the circumstances are better there means that if he were to return now, that looking ---- Better then. I mean, so are they going to be better better now? Is that the inference that's supposed to be drawn? I mean, was the BIA ---- I think that's what the BIA found, that it's unlikely that there's a great interest in him based on the fact of what you just said. Now, I hear what you're saying, that the mere fact that he was arrested in 2000, in your mind, could undermine this finding. But if you look at the facts as a whole, there was a single instance. We normally think of country conditions changing, meaning that it's changed after he had ---- after the Petitioner was persecuted. I mean, therefore, when you go back, you shouldn't expect the same environment to exist. Whereas my proposition is that you can't say that here. Well, his wife and his three children are still there, and the record appears that they have lived there peaceably. And that's probably true of thousands of people. But I think the Court can consider the fact that his family is there, and if the situation were so dramatically focused on him, that there would be retaliation against the family. Okay. And I don't think the Court can discount completely those factors which you just mentioned, that he is not a seeker. He's arguing that he was focused upon based on the police complaints that he made. And there's substantial evidence in the board report that there's been attrition and changes in the police, and the country report states there has been police that have been held accountable. With respect to him going back now, he is not a seeker. And I think that is something that the Court recognized because he said he was associated with his friend that was a seeker. So it's unlikely he will be singled out for that reason because he is not within that class. Wasn't the BIA really saying in that particular matter that the report itself suggests that Sikhs who have been identified as high-level militants in the movement would still be detained and questioned by the police? But then they suggest he isn't such a Sikh, and not only that, but he says he's apolitical. But that really doesn't seem to go to the very idea of do the country reports, as we have them here, have sufficient evidence? Now, we're talking about substantive evidence here that this particular person will not be persecuted because we already find that he has a well-founded fear. That's presumptive. So what part of the country report do I look at that says that? Well, first, I'll address the Ninth Circuit has said that the country reports are sufficient to rebut in SAO. I agree with that. And then if they do. If they do. So does it. So does it. That's the question. What part of the country report are you then relying upon? I looked at what the BIA said. Frankly, I don't find any other phrases in there other than they've already put down. Is that enough? That's the question. I think, combined with their individual findings, that it is substantial. What individual findings? The fact that he is, his family and his children are there, the fact that the conditions in Punjab itself have improved, that police forces change over. I don't find the conditions in Punjab have improved. That's the question. Looking at the country reports, it says in Punjab the pattern of disappearance probably in the 90s appears to be at an end. But we're not there. We're after that. We're in 95 and 2000. And it still happened. Well, we're bound by that record. I mean, obviously there's and we'll have to use that report. The Khalistan movement, as documented in the report, has dramatically subsided. I mean, obviously there's change in political climate in India now. But setting that aside and looking at the report, I think the report captures those peaceable conditions. And the board articulated those things specifically in the paragraph saying that the end of the insurgency, counterinsurgency in Punjab establishes that fact. And it also specifically says that in Punjab the pattern of disappearance is just as you said. The fact that he encountered trouble in 2000 seems to be linked directly to his attendance at the funeral of a friend of his, who appears to be far more the subject of the police's attention. And, unfortunately, that individual won't be there when he returns there. He wasn't there then either and hadn't been for five years. Correct. I see. No, I mean, I hear what you're saying. So. Funeral was belated. I mean, one thing that the government noted when it, obviously there's some time that has passed and this has all been decided, but the board never really made a specific finding as to whether he had a well-founded fear to begin with. It certainly would be possible for this court to remand it back for a determination whether his initial fear was well-founded. Well, but there's a presumption. If you're going to pass persecution, you're going to have a well-founded fear of future persecution. That's the presumption. Then the country conditions come forward and the government has the burden. The board didn't need to make a finding. The presumption is there. He would have to articulate that his initial claims put him in the class that would allow for his fears to be well-founded. And I don't know that. We don't have that in front of us. I mean, I think we can go on the record that we have here today that the board's, I mean, in a deferential approach given to the board, which this court should do, these state reports are broad. They apply to all regions of the country. While they feel somewhat formulaic and generalized, they are widely accepted under the case law. But more than that, this board did not look at it just as a cause. They looked at this individual. They looked at his circumstances. They looked at the fact that he is not a Sikh. He said he was friends with a Sikh. His family is still there. He had very little involvement in politics at all. The board rightfully can't. Your time has expired, so you can wrap up. I am pleased to answer any additional questions the Court may have. And I would ask that they affirm the board's, that you affirm the board's decision. Thank you for your argument. I think Lau was instructive in this case. In Lau at 255 Fed Third 998, the court had to consider a situation where abuses weren't widespread, there wasn't a pattern, but had to ask whether this particular individual will be singled out for individualized harm. The board didn't do that accurately, and as such, this court has to remand for a proper analysis on that point. Mr. Kumar was arrested in 2000 after the counterinsurgency had ended. He is, he was singled out. He was arrested at his home. He was arrested directly because he spoke out against police corruption and in support of his Sikh friend. It was both of those motives that his second arrest happened. What do we do with this? It appears that the Indian government is taking steps to hold accountable police and security officials who engaged in serious human rights abuses. Doesn't that go directly to your argument? I mean, we can talk about they say in Punjab the disappearance is prevalent, in the 90s appear to be an end, the Indian government is beginning to take steps to hold accountable the police, and the police are even facing charges. It's just not enough, Your Honor. It's not enough to support the board's finding by substantial evidence. Lastly, the government mentions a number of times they consider it as individual circumstances such as the fact that his wife and children are there. The board doesn't mention that fact. The board didn't apply an individualized analysis, and this court must remand under Lopez. Thank you. Okay. Thank you for your argument. Counsel, both of you, and the matter just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Leighton, Rymer, Smith N. R.